**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| REINCUBATE, LTD.,<br><br>        Plaintiff,<br><br>   v.<br><br>APPLE INC.,<br><br>        Defendant. | Civil Action No. 2:26-cv-00828 (CCC)<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND.....................................................................................2

     A.    Reincubate Agreed to Litigate in the Northern District of California ..2

     B.    Reincubate's Claims are Based on Conduct that Allegedly Occurred in California..................................................................................................4

III.    LEGAL STANDARD ............................................................................8

IV.   ARGUMENT.........................................................................................9

     A.    The Court Should Enforce the Parties' Forum-Selection Agreement 10

           1.    The Parties Agreed to Litigate in the Northern District of California ..............................................................................10

           2.    Reincubate Cannot Establish Extraordinary Circumstances Against Enforcement of the Parties' Forum-Selection Clause .14

     B.    The Interests of Justice and Convenience Support Transfer to the Northern District of California Under § 1404(a) ................................16

           1.    Public Interest Factors Favor Transfer......................................16

           2.    The Private Interest Factors Favor Transfer .............................22

V.      CONCLUSION ...................................................................................29

**TABLE OF EXHIBITS**

| No. | Description |
|-----|-------------|
| 1 | Apple 10-K 2025 (Oct. 31, 2025) |
| 2 | Declaration of Jacob Anderson |
| 3 | Declaration of Jeremy Butcher |
| 4 | Declaration of Brad Ford |
| 5 | Declaration of Della Huff |
| 6 | Declaration of James Infusino |
| 7 | Declaration of Halle Matthews |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ...........................................................................29

*Andujar v. Hub Grp. Trucking, Inc.*,
  No. 23-16987, 2024 WL 1715334 (D.N.J. Apr. 22, 2024) ...............................13

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ..........................................................................19

*In re Apple Inc. Smartphone Antitrust Litig.*,
  No. 24-3113 (D.N.J.) ........................................................................................23

*APT Sys., Inc. v. Apple Inc.*,
  No. 21-2121, 2022 WL 226812 (E.D. Pa. Jan. 26, 2022) ...........................10, 14

*Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*,
  No. 13-7318, 2015 WL 167378 (D.N.J. Jan. 13, 2015) ....................................13

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
  571 U.S. 49 (2013)................................................................1, 9, 10, 14, 15, 22

*Bakay v. Apple Inc.*,
  No. 24-00476, 2024 WL 3381034 (N.D. Cal. July 11, 2024), *aff'd*,
  2025 WL 3012822 (9th Cir. Oct. 28, 2025) ......................................................24

*Care One, LLC v. Nat'l Labor Relations Bd.*,
  680 F. Supp. 3d 540 (D.N.J. 2023)....................................16, 17, 18, 22, 23

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser
  Grp. PLC*,
  No. 19-15382, 2020 WL 7022654 (D.N.J. Nov. 30, 2020)...............................12

*Collins v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017) .................................................................................9

*In re Consol. Parlodel Litig.*,
  22 F. Supp. 2d 320 (D.N.J. 1998)......................................................................23

*Coring Co. v. Apple Inc.*,
No. 22-01044 (N.D. Cal.) .......................................................................................23

*Coronavirus Reporter Corp. v. Apple Inc.*,
No. 24-0053, 2024 WL 5284023 (D. Wyo. Nov. 21, 2024) ............10, 12, 13, 14

*Coronavirus Reporter v. Apple Inc.*,
560 F. Supp. 3d 632 (D.N.H. 2021).........................................................10, 11, 15

*EpicentRx, Inc. v. Superior Court*,
18 Cal. 5th 58 (2025) ..........................................................................................21

*In re Ferrero Litig.*,
768 F. Supp. 2d 1074 (S.D. Cal. 2011)...............................................................21

*Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*,
No. 20-6180, 2021 WL 268176 (D.N.J. Jan. 27, 2021) .....................................15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .....................................................................18, 28

*Gray v. Apple Inc.*,
No. 13-7798, 2016 WL 4149977 (D.N.J. Aug. 3, 2016)....................................19

*Hoffer v. InfoSpace.com, Inc.*,
102 F. Supp. 2d 556 (D.N.J. 2000)....................................................................19

*In re Hoffmann*,
587 F.3d 1333 (Fed. Cir. 2009) .........................................................................19

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ..............................................................................11

*IpVenture, Inc. v. Acer, Inc.*,
879 F. Supp. 2d 426 (D. Del. 2012)....................................................................21

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
No. 13-824, 2014 WL 4829027 (D. Del. Sept. 25, 2014) .................................27

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) ............................................................................11

iv

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .......................................................................17, 22

*Kidstar v. Facebook, Inc.*,
   No. 18-13558, 2020 WL 4382279 (D.N.J. July 31, 2020) ................................17

*Kisano Trade & Invest Ltd. v. Lemster*,
   737 F.3d 869 (3d Cir. 2013) ...............................................................................9

*LG Elecs. Inc. v. First Int'l Comput., Inc.*,
   138 F. Supp. 2d 574 (D.N.J. 2001) ...............................................24, 25, 26, 28

*Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*,
   102 F. Supp. 2d 518 (D.N.J. 2000) .....................................................23, 25, 26

*Lony v. E.I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3d Cir. 1989) .............................................................................22

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)..............................................................................................15

*Mancuso v. L'Oréal USA, Inc.*,
   No. 20-5701, 2021 WL 365228 (D.N.J. Feb. 1, 2021)......................................21

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) ...............................................................................14

*Mitel Networks Corp. v. Facebook, Inc.*,
   943 F. Supp. 2d 463 (D. Del. 2013)..................................................................24

*Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*,
   917 F. Supp. 324 (D.N.J. 1995)........................................................................28

*Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*,
   305 F. Supp. 3d 580 (D.N.J. 2018)...................................................................13

*Papa v. IAT Ins. Grp., Inc.*,
   No. 25-04049, 2026 WL 592360 (D.N.J. 2026)...............................................27

*Peck v. Jayco, Inc.*,
   665 F. Supp. 3d 607 (D.N.J. 2023)...................................................................17

v

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)..................................................................................23

*Primoris T&D Servs., LLC v. FirstEnergy Corp.*,
No. 24-05877, 2026 WL 497045 (D.N.J. Feb. 23, 2026)...................................18

*Quintiles IMS Inc. v. Veeva Sys., Inc.*,
No. 17–177, 2017 WL 2766166 (D.N.J. June 23, 2017)...................................28

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
938 F.3d 515 (3d Cir. 2019) .......................................................................11

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993)...........................................................22, 25, 29

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) .....................................................................26

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
676 F. Supp. 2d 321 (D. Del. 2009)..............................................................26

*Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*,
No. 22-6369, 2023 WL 4764813 (D.N.J. July 26, 2023)............................20, 21

*United States v. Apple Inc.*,
No. 24-04055 (D.N.J.) ...............................................................................23

*Wall Street Aubrey Golf, LLC v. Aubrey*,
189 F. App'x 82 (3d Cir. 2006) ...................................................................14

**Statutes**

28 U.S.C. § 1391(b)(1)–(2)...............................................................................16

28 U.S.C. § 1400(b) ........................................................................................16

28 U.S.C. § 1404(a) ....................................................................................9, 16

**Other Authorities**

*About*, Reincubate, https://reincubate.com/about/ (last visited May 1,
2026) ........................................................................................................4

vi

Corsair Gaming, Inc., *Turn Your Phone into a Webcam-Corsair Acquires EpocCam*, Nasdaq (Oct. 29, 2020), https://www.nasdaq.com/press-release/turn-your-phone-into-a-webcam-corsair-acquires-epoccam-2020-10-29 ..................................................8

*Job Creation*, Apple Inc., http://www.apple.com/job-creation/ (last visited May 1, 2026) ............................................................................2

Oliver Giles, *epoccam_linux*, GitHub, https://github.com/ohwgiles/epoccam_linux (last visited May 1, 2026) ................................................................................8

*Table C-1-U.S. District Courts-Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2025)*, https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-1 (last visited May 1, 2026) .............................................................20

*Table C-5-U.S. District Courts-Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2025)*, https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5 (last visited May 1, 2026) .............................................................20

**Rules**

Fed. R. Civ. P. 45 ....................................................................................28

## I.    INTRODUCTION

All developers distributing apps on the App Store sign the Developer Program License Agreement ("DPLA"), which contains a forum-selection clause, where the developer agrees to litigate their disputes with Apple Inc. in the Northern District of California.  That is where Apple is headquartered, where most of its relevant employees work, and where most of the alleged events giving rise to Plaintiff Reincubate, Ltd.'s claims occurred.  Every court that has been asked to transfer a developer's antitrust case to the Northern District of California—including where the developer also brings patent claims—has done so.  Pursuant to 28 U.S.C. § 1404(a), Apple respectfully requests that this Court transfer this case to the Northern District of California on two independent grounds.

First, forum-selection clauses are "given controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013).  This is not an exceptional case.  Reincubate has repeatedly entered into the DPLA with Apple, including with respect to the Camo Studio and Camo Camera app at issue in this case.  The DPLA's forum-selection clause is unambiguous: "Any litigation or other dispute resolution between [the developer] and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or [the developer's] relationship with Apple will take place in the Northern District of California[.]"  *See* Ex. 3, Ex. A § 14.10.  The

1

mandatory forum-selection clause therefore controls.

Second, even aside from the forum-selection clause, transfer is proper under 28 U.S.C. § 1404(a) because "the convenience of parties and witnesses" as well as "the interest of justice" are better served by litigating this case in the Northern District of California.  Reincubate is a British company, and neither it nor this dispute have any ties to New Jersey.  The only asserted reason Reincubate filed this suit here is because the United States is litigating a different antitrust action against Apple before the Honorable Judge Neals, U.S.D.J.  But Reincubate has not sought to relate this case to that factually and legally distinct litigation.  Reincubate's claims arise out of alleged conduct in California, and the Northern District of California will be a more convenient forum for the parties and non-party witnesses.

For both of these independent reasons, the Court should transfer this matter to the Northern District of California.

## II.    BACKGROUND

### A.    Reincubate Agreed to Litigate in the Northern District of California

Apple is a California corporation headquartered in Cupertino, California.  Ex. 1 (Apple 10-K (Oct. 31, 2025)) at 17.  It employs tens of thousands of employees in or near its California headquarters.  *See Job Creation*, Apple Inc., http://www.apple.com/job-creation/ (last visited May 1, 2026).  And Apple's

management and research and development facilities relevant to this case are also located in the Northern District of California. *See infra* § II.B.

Apple makes and sells various consumer electronics and services. Ex. 1 (Apple 10-K (Oct. 31, 2025)) at 1. It also operates the App Store, a platform on which third-party software developers can offer apps for download to iPhone and iPad users. *Id.* at 2. All developers who wish to distribute apps on Apple's App Store must agree to the DPLA, which sets out various terms and conditions that govern a developer's use of Apple's tools, technologies, and services. Ex. 3 ¶ 6. The DPLA contains a forum-selection clause:

> Any litigation or other dispute resolution between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District with respect any such litigation.

*Id.*, Ex. A § 14.10.[1] Developers are instructed, in bold and capitalized letters, to read this agreement before executing the DPLA. *Id.*, Ex. A at 1.

---

[1] "Apple Software" is a defined term in the DPLA that means: "Apple SDKs, iOS, watchOS, tvOS, iPadOS, visionOS, and/or macOS, the Provisioning Profiles, FPS SDK, FPS Deployment Package, and any other software that Apple provides to You under the Program, including any Updates thereto (if any) that may be provided to You by Apple under the Program." *See* Ex. 3, Ex. A at 3. That is, it covers, by way of example, the software development kits Apple makes available to developers, Apple's proprietary operating system software, and various other software tools that developers access to make and enhance their apps.

Reincubate is a company based in London, organized under the laws of England and Wales. Compl. ¶¶ 6, 9; *see also About*, Reincubate, https://reincubate.com/about/ (last visited May 1, 2026). It has developed multiple apps that it offers on Apple's App Store: Camo Studio—a mobile "command center" that allows users to connect external cameras and microphones to stream or edit video, and Camo Camera—a companion app for Studio designed to turn a smartphone into a webcam that connects to Camo Studio. Reincubate has repeatedly entered into the DPLA with Apple. Ex. 3 ¶¶ 8–11. Reincubate first executed the DPLA on June 21, 2013 and accepted new versions of the DPLA on numerous occasions since then, including on October 22, 2025, just a few months before bringing this suit, and then twice after filing the Complaint on February 9, 2026 and March 27, 2026. *Id.* ¶ 8.

### B.    Reincubate's Claims are Based on Conduct that Allegedly Occurred in California

On January 27, 2026, Reincubate filed a complaint against Apple. Reincubate brings four causes of action. It first alleges that Apple violated Section 2 of the Sherman Act by monopolizing an alleged market for mobile operating systems. Compl. ¶¶ 176–202. Reincubate next seeks a declaration that Section 11.2(d) of the DPLA, which permits Apple to terminate the DPLA under certain circumstances, is unenforceable under the antitrust laws and as "contrary to public policy." *Id.* ¶¶ 203–09. Finally, Reincubate accuses Apple of infringing U.S. Patent Nos.

4

11,924,258 ("the '258 patent") and 12,335,323 ("the '323 patent") (collectively, "Asserted Patents"), which are both directed to "capturing, processing and enhancing video in a manner supportive of and suitable for the purposes of real-time video communication," *see* '258 patent at 1:17–20; '323 patent at 1:22–25, by making and selling a camera-related feature called Continuity Camera and Final Cut Camera with the Live Multicam functionality in Final Cut Pro for iPad (collectively, the "Accused Products"). Compl. ¶¶ 210–96.[2]

Reincubate's antitrust claims arise from Apple's policies, platform decisions, and developer interactions—all of which Apple directs from the Northern District of California. *Id.* ¶¶ 6, 8, 53, 95–100, 126, 156. Specifically, Reincubate alleges that Apple maintained "monopoly power in the U.S. mobile operating systems market" through "systematic use" of its control over iOS (Apple's proprietary mobile operating system). *Id.* ¶ 55. The gist of this theory is that "Apple leveraged its operating-system dominance, restricted interoperability, and substituted its own feature (Continuity Camera) for Camo's cross-platform offering" to "foreclos[e] competitive alternatives that would have allowed interoperability with Android devices." *Id.* ¶ 73.

---

[2] The Complaint describes Continuity Camera as a feature Apple developed to allow users to use an iPhone as a webcam. Compl. ¶ 101. Final Cut Pro is a video-editing app that Apple offers to make and edit videos on iPad. *See id.* ¶¶ 7, 233–45.

Where the Complaint alleges the location of key events, it places them in the Northern District of California. For example, the June 6, 2022 Worldwide Developers Conference—at which Apple announced Continuity Camera, the feature allegedly introduced "to preserve [Apple's] mobile OS monopoly"—took place at Apple Park in Cupertino. Compl. ¶¶ 73, 99–105. Reincubate also describes alleged meetings between Apple and Reincubate at Apple's headquarters that took place after that conference. *See, e.g.*, *id.* ¶ 156.

More broadly, Apple manages its interactions with developers and access to its platforms through teams located in the Northern District of California. Ex. 3 ¶¶ 12–15. Apple personnel in or near Cupertino establish and enforce App Store policies and administer the Apple Developer Program. *Id.* These employees in Cupertino set and administer the policy governing the review of proposed applications on Apple's App Store, and they maintain the DPLA and the processes by which developers participate in the Apple Developer Program in Cupertino. *Id.* Files related to App Review are also located and accessible in California. *See id.* ¶¶ 13–14. None of the alleged policies, decisions, or conduct at issue allegedly took place in or were directed from New Jersey. *Id.* ¶ 16.

Reincubate's patent claims arise from the research and development, marketing, and licensing of the Accused Products—all of which Apple also directs from the Northern District of California. Apple's senior management, primary

research and development functions (such as Apple's engineers), and core business operations related to these Accused Products are all located in or near Cupertino. Ex. 4 ¶ 3; Ex. 6 ¶ 3. That includes most of Apple's engineers who worked on the Accused Products, who are based out of Apple's headquarters in Cupertino or other west coast outposts:

- **Continuity Camera**. Brad Ford manages the development of Continuity Camera and works out of Apple's Cupertino headquarters. Ex. 4 ¶¶ 1, 6–8. His team of 10 employees, all of whom focus on Continuity Camera, also work in or near Cupertino. *Id.* ¶ 10. A handful of other employees in San Diego and Cambridge (UK) work on features that are incorporated into Continuity Camera but do not work on Continuity Camera specifically. *Id.* ¶ 11.

- **Final Cut Camera and Live Multicam in Final Cut Pro**. James Infusino oversees the development of Final Cut Camera and the Live Multicam functionality. Ex. 6 ¶ 6. He works in Culver City, California. *Id.* ¶ 1. The engineers responsible for these features—approximately 10 employees—work principally in Culver City, San Diego, and Cupertino, California, with one engineer located in Boulder, Colorado. *Id.* ¶ 8.

No engineers who worked on Continuity Camera or Final Cut Camera and the Live Multicam functionality are located in New Jersey. Ex. 4 ¶¶ 10, 12, 15, 18–19; Ex. 6 ¶¶ 8, 12, 14, 15.

In addition, nearly all of Apple's marketing, licensing, and finance personnel who have relevant knowledge work in the Northern District of California. Ex. 2 ¶ 5; Ex. 5 ¶ 6; Ex. 7 ¶ 5. For example, the principal employees involved in marketing the Accused Products and Apple's patent licensing work out of Cupertino. Ex. 2 ¶ 5; Ex. 5 ¶ 6. Apple's finance professionals who manage records and data relating

7

to the sales of the Accused Products work there too.  Ex. 7 ¶¶ 5–6.  And Apple's source code and its relevant technical, marketing, and financial documents are accessed by employees who mostly work in or near Cupertino.  Ex. 4 ¶ 16; Ex. 5 ¶ 5; Ex. 6 ¶¶ 11–14; Ex. 7 ¶ 6.

Furthermore, key third-party witnesses are located in the Northern District of California.  That includes at least one former Apple employee who worked extensively on the accused Continuity Camera functionality.  Ex. 4 ¶ 14.  It also includes CORSAIR Gaming, Inc., a company headquartered in Fremont, California (within the Northern District of California), that owns EpocCam, which featured a functionality similar to Camo, enabling smartphones to function as webcams.  *See* Corsair Gaming, Inc., *Turn Your Phone into a Webcam—Corsair Acquires EpocCam*, Nasdaq (Oct. 29, 2020), https://www.nasdaq.com/press-release/turn-your-phone-into-a-webcam-corsair-acquires-epoccam-2020-10-29.  EpocCam was available to the public years before the Asserted Patents and may therefore provide Apple with a strong affirmative defense that the Asserted Patents are invalid.  *See* Oliver Giles, *epoccam_linux*, GitHub, https://github.com/ohwgiles/epoccam_linux (last visited May 1, 2026) (listing source code files written in 2015).

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Typically, courts weigh four factors when exercising their discretion to transfer venue under § 1404(a):

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors affecting the convenience of the forum.

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citations and quotations omitted). But the presence of an enforceable "forum selection clause alters this analysis." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017), and "should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63.

## IV.   ARGUMENT

The Court should transfer this case pursuant to 28 U.S.C. § 1404(a) on two independent grounds. First, the Court should enforce the parties' forum-selection agreement, which designates the Northern District of California as the agreed-upon venue for this dispute. Second, and regardless of the forum-selection clause, the Court should transfer the case for the convenience of the parties and in the interests of justice because the applicable private and public interests favor litigation in the Northern District of California.

**A.    The Court Should Enforce the Parties' Forum-Selection Agreement**

Reincubate and Apple agreed to a mandatory forum-selection clause in the DPLA that covers the alleged antitrust and patent infringement claims. Because no "exceptional" circumstances overcome that agreement, *Atl. Marine*, 571 U.S. at 63, this Court should enforce the forum-selection clause—just as other courts have done when Apple moved to transfer similar cases filed by developers outside the Northern District of California. *See, e.g.*, *Coronavirus Reporter Corp. v. Apple Inc.*, No. 24-0053, 2024 WL 5284023, at *3 (D. Wyo. Nov. 21, 2024); *Coronavirus Reporter v. Apple Inc.*, 560 F. Supp. 3d 632, 638–41 (D.N.H. 2021); *APT Sys., Inc. v. Apple Inc.*, No. 21-2121, 2022 WL 226812, at *11–12 (E.D. Pa. Jan. 26, 2022).

**1.    The Parties Agreed to Litigate in the Northern District of California**

Like all developers that seek to distribute apps through Apple's App Store, Reincubate repeatedly agreed to the DPLA—including the forum-selection clause selecting the Northern District of California as the "exclusive venue" for litigation. Ex. 3, Ex. A § 14.10. Because Reincubate's claims "aris[e] out of or relat[e] to [the DPLA], the Apple Software, or [Reincubate's] relationship with Apple," the forum-selection clause requires that this case be litigated in the Northern District of California. *Id.*; *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074–75 (3d Cir. 1997) (stating that "in the interpretation" of a "forum

10

selection clause," courts "look to the text of the contract to determine whether it unambiguously states the parties' intentions") (cleaned up).

Start with Reincubate's claim for declaratory judgment. *See* Compl. ¶¶ 203–09. Reincubate asserts that "Section 11.2(d) of the DPLA is unenforceable and unlawful" because this termination provision is "an unreasonable restraint of trade in violation of Section 1 of the Sherman Act." *Id.* ¶ 206; *see also id.* ¶¶ 207–08 (challenging Section 11.2(d) under Section 2 of the Sherman Act and public policy as well). In other words, Reincubate challenges the "contractual term" itself as "an exclusionary practice." *Id.* ¶ 207. This claim thus arises directly out of the DPLA, fitting well within courts' "extremely broad" construction that claims "connected in any way with" the parties' contract "aris[e] out" of it. *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019); *see also, e.g., Coronavirus Reporter*, 560 F. Supp. 3d at 635, 640–41 (finding the DPLA's "broad[]" forum-selection clause applied to similar Sherman Act claims challenging parts of the DPLA itself). This alone means the entire case should be transferred. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403–05 (3d Cir. 2017) (transferring an entire case, rather than severing claims, unless the contracting parties' settled expectations are "overwhelmingly" outweighed by countervailing interests); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, No. 19-15382, 2020 WL 7022654, at *6 (D.N.J. Nov. 30, 2020) (holding that

11

"[t]he interest of efficiency favors the transfer of all claims" despite only one set of claims falling within forum-selection clause).

Because the forum-selection clause "extends not merely to claims relating to the License Agreement but also to claims relating to the 'relationship' between plaintiff and Apple," *Coronavirus Reporter*, 560 F. Supp. 3d at 640–41, Reincubate's other antitrust claims and its patent claims are well within the scope of the parties' agreement too.  For example, Reincubate alleges that "Apple actively cultivated a relationship of trust with Reincubate" and "induced the company to share technical details, beta builds, and market data, and leveraged that privileged access to inform its own development of Continuity Camera."  Compl. ¶ 126; *see also id*. ¶¶ 1, 6–7, 55, 95–98, 126.  Reincubate's antitrust and patent claims also arise out of or relate to the Apple Software.  Apple allegedly maintained an operating-system monopoly in violation of the antitrust laws through its control of the iOS software licensed by the DPLA.  *See id.* ¶¶ 53–55, 177.  And Apple supposedly "infringed [Reincubate's patents] by, without authorization, making, using, offering for sale, and selling devices running iOS, iPadOS, macOS, and tvOS that support" Continuity Camera and Final Cut Camera with Live Multicam.  *Id.* ¶ 7.  "Because it is undisputed that [Reincubate's] agreement to be bound by the License Agreement was a prerequisite to Apple's consideration of [Reincubate's] app for distribution through the App Store, the conduct underlying [Reincubate's] claims would not have

12

occurred but for the License Agreement and the relationship it created." *Coronavirus Reporter*, 560 F. Supp. 3d at 640–41.

The forum-selection clause therefore obligated Reincubate to sue in the Northern District of California. A "mandatory forum selection identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship." *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 13-7318, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (internal quotation marks omitted). The DPLA does just that: it specifies that any litigation "***will take place*** in the Northern District of California" and that parties "consent to the personal jurisdiction of and ***exclusive venue*** in the state and federal courts within that District." Ex. 3, Ex. A § 14.10 (emphasis added). The DPLA's plain language thus "provid[es] the sole forum available for resolution of the claims," *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018), and thereby "indicates the parties' intent to have the Northern District of California be the exclusive venue to resolve their disputes," *Coronavirus Reporter Corp.*, 2024 WL 5284023, at *3; *see also Andujar v. Hub Grp. Trucking, Inc.*, No. 23-16987, 2024 WL 1715334, at *4–5 (D.N.J. Apr. 22, 2024) (transferring the case due to a mandatory forum-selection clause); *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84–86 (3d Cir. 2006) (similar).

13

Courts have consistently enforced the DPLA's mandatory forum-selection clause in cases brought by developers like Reincubate. *See, e.g.*, *Coronavirus Reporter Corp.*, 2024 WL 5284023, at *3 (granting transfer because the DPLA's forum-selection "clearly designates the Northern District of California as the specified venue and contains mandatory language stating that this forum will be the 'exclusive venue'"); *Coronavirus Reporter*, 560 F. Supp. 3d at 639–41 (granting transfer because the DPLA's forum-selection clause "speaks for itself, and its plain language establishes that it is mandatory rather than permissive"); *APT Sys.*, 2022 WL 226812, at *11–12 (enforcing the DPLA's forum-selection clause). This Court should do the same.

**2.    Reincubate Cannot Establish Extraordinary Circumstances Against Enforcement of the Parties' Forum-Selection Clause**

Where a valid forum-selection clause exists, courts consider only whether compelling public interests preclude enforcement of the parties' agreement. *Atl. Marine*, 571 U.S. at 64. Such interests "rarely defeat a transfer motion," *id.*, and the party "acting in violation of the forum-selection clause" bears a heavy "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Thus, "'[i]n all but the most unusual cases,' the parties will be held to their bargained-for choice of forum." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57–58 (3d Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 66). Reincubate

14

cannot carry its "exceptional" burden to depart from the parties' agreement here. *See Atl. Marine*, 571 U.S. at 63.

To begin, the parties' agreement on the appropriate forum means Reincubate's "choice of forum merits no weight." *Id*. at 63. And as described in detail below, the "public-interest factors," far from "overwhelmingly disfavor[ing] a transfer," *id*. at 67, actually weigh in favor of transfer here. *See infra* § IV.B.1. At a minimum, they do not overcome "the strong presumption in favor of enforcing the [DPLA]" in this case, *Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, No. 20-6180, 2021 WL 268176, at *7 (D.N.J. Jan. 27, 2021). And because the parties agreed to litigate disputes such as this one in the Northern District of California, Reincubate has "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [itself] or [its] witnesses" and the "court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64.

Nor can Reincubate make the "strong showing" required to declare the clause unenforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). To be sure, Reincubate alleges that the DPLA's *termination clause* is unenforceable "as applied to Reincubate's patent infringement claims in this action" because it "constitutes an unreasonable restraint of trade" and "an unlawful exercise of monopoly power." Compl. ¶¶ 206–07. That claim is meritless. But relevant here,

15

Reincubate does not claim the forum-selection clause is unlawful or otherwise unenforceable. To the extent Reincubate intends to argue as much, courts have "considered" and "squarely rejected that theory." *Coronavirus Reporter*, 560 F. Supp. 3d at 639 (citing cases). Accordingly, the Court should enforce the DPLA's mandatory forum-selection clause and transfer this matter to the Northern District of California just as courts across the country have routinely done.

**B.    The Interests of Justice and Convenience Support Transfer to the Northern District of California Under § 1404(a)**

Transfer is also warranted under 28 U.S.C. § 1404(a) even without considering the forum-selection clause. A court may transfer an action that "might have been brought" in another district and transfer there will enhance "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *accord Care One, LLC v. Nat'l Labor Relations Bd.*, 680 F. Supp. 3d 540, 544 (D.N.J. 2023). It is beyond dispute that this case "might have been brought" in the Northern District of California, 28 U.S.C. § 1404(a), where Apple is headquartered, frequently litigates antitrust and patent claims, and the alleged events central to Reincubate's claims transpired. Compl. ¶¶ 11, 99–100; *see also* 28 U.S.C. § 1391(b)(1)–(2); 28 U.S.C. § 1400(b). The public and private interest factors overwhelmingly favor transfer.

**1.    Public Interest Factors Favor Transfer**

To determine "whether on balance the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum," courts consider six public interest factors: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Care One*, 680 F. Supp. 3d at 544–45 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  No single factor is dispositive, but each strongly favors transfer or is inapplicable here.  *See Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 614 (D.N.J. 2023) ("[D]istrict courts have the discretion to determine the weight that each factor receives under the circumstances presented.").

**Practical Considerations and Judicial Economy.**  Apple is headquartered in Cupertino, California, and its employees responsible for setting the policy governing review of proposed iOS applications, the leadership of the Worldwide Developer Relations team, and the core teams responsible for developing and marketing the Accused Products are principally based in Cupertino.  Ex. 3 ¶¶ 12–15; Ex. 4 ¶¶ 8–13; Ex. 5 ¶ 6; Ex. 6 ¶ 8.  Apple's marketing, sales, and financial documents concerning Reincubate's allegations are located in or are accessible in the Northern District of California as well.  Ex. 5 ¶ 5; Ex. 7 ¶ 6. Because the majority

17

of the evidence is in the Northern District of California, a trial would be more convenient and less expensive in that venue. *See, e.g.*, *Kidstar v. Facebook, Inc.*, No. 18-13558, 2020 WL 4382279, at *5 (D.N.J. July 31, 2020) (finding "transfer is appropriate" because "Defendants' location in California makes it the proper venue for enforcement, and for an easier, more expeditious, and less expensive trial."); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (recognizing "the bulk of the relevant evidence usually comes from the accused infringer" in patent infringement cases and, therefore, "the place where the defendant's documents are kept weighs in favor of transfer to that location") (citations omitted); *see also Care One*, 680 F. Supp. at 548–49 (holding that the practical considerations "factor strongly favor[ed] transfer" due to the transferee courts' "close-in knowledge" of information that could support the defendant's laches defense). The same is true for third parties who may be knowledgeable about the accused technology or relevant prior art, such as a former Apple Continuity Camera engineer and CORSAIR Gaming, which acquired a smartphone-to-webcam technology called "EpocCam" that is similar to Camo. *See Genentech*, 566 F.3d at 1343–44 (holding that where "invalidity might be [an issue] at trial," the identification of witnesses "relevant to those issues . . . weighs in favor of transfer"); *see also supra* § II.B.

In contrast, Reincubate "points to no specific witnesses or facts originating in New Jersey that would make this state a more efficient forum in which to resolve

18

this matter." *Primoris T&D Servs., LLC v. FirstEnergy Corp.*, No. 24-05877, 2026 WL 497045, at *8 (D.N.J. Feb. 23, 2026). Reincubate is a British company and alleges only that Apple operates retail stores in New Jersey and "derives substantial revenue from New Jersey." Compl. ¶¶ 37–38. But Apple operates retail stores in 44 states and the District of Columbia and derives revenue from each of them. Ex. 7 ¶ 7. Regardless, Apple retail employees are not in charge of App Store review policies, managing the relationship with Reincubate, designing the accused technology, or strategizing marketing for the accused technology. Ex. 3 ¶¶ 12–15; Ex. 5 ¶ 7. Reincubate alleges no facts unique to New Jersey. The only two places mentioned in the Complaint outside of the Jurisdiction and Venue section are the United Kingdom and California. *See* Compl. ¶¶ 9–11, 99.

**Local Interests.** The Northern District of California's interest in resolving this case also favors transfer. "[S]ignificant connections between a particular venue and the events that gave rise to a suit . . . weigh[] in that venue's favor," *In re Hoffmann*, 587 F.3d 1333, 1338 (Fed. Cir. 2009), and "California has a substantial interest in adjudicating" cases where "[a]ll, or virtually all, of the relevant facts concern events that occurred in . . . California." *Gray v. Apple Inc.*, No. 13-7798, 2016 WL 4149977, at *6 (D.N.J. Aug. 3, 2016). Here, the App Store review personnel, Developer Relations leadership, and the core team responsible for developing the Accused Products are based in California. *See In re Apple Inc.*, 979

19

F.3d 1332, 1345 (Fed. Cir. 2020) (where "accused products were designed, developed, and tested in NDCA," and "the lawsuit 'calls into question the work and reputation of several individuals residing' in NDCA, this factor weighs in favor of transfer"); *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 576 (D.N.J. 2000) ("Because a substantial amount, if not all, of the alleged culpable conduct occurred in Washington, not New Jersey, Washington has a stronger public interest in adjudicating this dispute.").

**Court Congestion.**  The relative number of pending cases favors transfer. The Federal Judiciary's last assessment observes that over 92,769 civil cases are pending in the District of New Jersey compared to only 15,305 civil cases pending in the Northern District of California.  *Table C-1—U.S. District Courts—Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2025)*, https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-1 (last visited May 1, 2026); *see also Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-6369, 2023 WL 4764813, at *3 n.2 (D.N.J. July 26, 2023).  As a result of the heavy caseload in the District of New Jersey, the median filing-to-trial time for civil cases also is faster in the Northern District of California. *See Table C-5—U.S. District Courts—Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2025)*, https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5 (last visited May 1, 2026)

20

(reporting a median of 46.8 months to trial in the District of New Jersey compared to 35.4 months in the Northern District of California). That cases are more "likely to reach [a] resolution more efficiently in the Northern District of California than in this Court" further favors transfer. *Unbeatablesale.com*, 2023 WL 4764813, at *3 (transferring case to the Northern District of California).

**Public Policy.** The public policy of both New Jersey and California favor transfer. New Jersey public policy "favor[s] [] enforcing contractual provisions, including forum selection clauses." *Id.* (quoting *Mancuso v. L'Oréal USA, Inc.*, No. 20-5701, 2021 WL 365228, at *6 (D.N.J. Feb. 1, 2021)). The same is true for California, which has a "general public policy interest in enforcing any valid contract," including forum-selection clauses. *See EpicentRx, Inc. v. Superior Court*, 18 Cal. 5th 58, 76 (2025). Each jurisdiction therefore prefers that the DPLA be enforced according to its terms, including the parties' agreement to litigate in the Northern District of California.

**Remaining Factors.** None of the remaining factors favor New Jersey. There is no meaningful difference in the enforceability of the judgment "because a judgment from this District or the Northern District of California could easily be registered in another district." *Unbeatablesale.com*, 2023 WL 4764813, at *3. And the Court's familiarity with applying state law is inapplicable because this action is not a diversity case, *see* Compl. ¶¶ 34–35, and Reincubate brings no claims that arise

21

under state law. *See IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 433 (D. Del. 2012) ("This is not a diversity case, and thus knowledge of state law is irrelevant here."). Insofar as such an issue would arise, the DPLA selects California law and thus further favors a California forum. Ex. 3, Ex. A § 14.10; *see In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) ("A California district court is more familiar with California law than district courts in other states."). Taken together, the public interest factors strongly weigh in favor of transfer.

### 2. The Private Interest Factors Favor Transfer

The six private interest factors—(1) the plaintiff's preferred forum; (2) the defendant's preference; (3) the place in which the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records—also strongly favor transfer. *Care One*, 680 F. Supp. 3d at 545 (citing *Jumara*, 55 F.3d at 879).

**Plaintiff's Choice of Forum.** No deference is due to Reincubate's decision to file this case in New Jersey, even setting aside the parties' agreement to litigate elsewhere. *See Atl. Marine*, 571 U.S. at 63–64. First, Reincubate is a foreign company and is not attempting to litigate on its "home turf." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993); *see Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633–34 (3d Cir. 1989) (reducing deference because the assumption that the chosen forum is convenient "is much less reasonable" for a

22

foreign plaintiff); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (same). Second, any deference courts generally afford further "diminishes" when, as here, the chosen forum lacks meaningful ties to the dispute. *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 323–24 (D.N.J. 1998); *see supra* § II.B; *see also*, *e.g.*, *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 530 (D.N.J. 2000) (reducing deference where "the [chosen] forum . . . has little connection with the operative facts"); *Care One,* 680 F. Supp. 3d at 548 (same).

Reincubate claims it is "efficient" to litigate this case in the District of New Jersey because the United States, several states, and putative follow-on classes are litigating different antitrust cases against Apple before Judge Neals: *United States v. Apple Inc.*, No. 24-04055 (D.N.J.) and *In re Apple Inc. Smartphone Antitrust Litig.*, No. 24-3113 (D.N.J.). Compl. ¶ 41. But Reincubate has not sought to relate this case to those actions, nor would relation be proper to those factually and legally distinct actions: none allege monopolization of a "mobile operating system market" as this case asserts. *Id.* ¶ 32. Instead, those cases claim monopolization of different alleged markets (the purported smartphone and smartwatch markets) through entirely different alleged conduct (Apple's alleged "'lock in' strategy" unrelated to webcam technology). And if recent litigation experience suffices to support venue, the Northern District of California is at least equally appropriate: judges there have presided over developers' patent-and-antitrust theories (*e.g.*, *Coring Co. v. Apple*

23

*Inc.*, No. 22-01044 (N.D. Cal.)) and other antitrust cases alleging monopolization of a mobile operating systems market (*e.g.*, *Bakay v. Apple Inc.*, No. 24-00476, 2024 WL 3381034 (N.D. Cal. July 11, 2024), *aff'd*, 2025 WL 3012822 (9th Cir. Oct. 28, 2025)).

**Defendant's Preferred Forum.** Apple has concrete reasons to prefer litigation in the Northern District of California. That is where it is headquartered, where most of its relevant employees work, where its documents are accessible, and where it has agreed to litigate disputes like this one. Ex. 2 ¶¶ 5–6; Ex. 3 ¶¶ 12–15; Ex. 5 ¶¶ 5–6; Ex. 6 ¶¶ 11–14; Ex. 7 ¶¶ 5–6. Accordingly, this factor strongly favors transfer. *See LG Elecs. Inc. v. First Int'l Comput., Inc.*, 138 F. Supp. 2d 574, 590–91 (D.N.J. 2001) (finding transfer appropriate where relevant witnesses and documents were located in the transferee forum and not in New Jersey); *see also Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 470 (D. Del. 2013) ("[Defendant] clearly prefers to litigate in the Northern District of California, the district where it operates its principal place of business and headquarters. This factor weighs in favor of transfer.").

**Location In Which Claim Arose.** Reincubate's claims arise from activities centered in the Northern District of California. In patent infringement actions, courts in this District apply a "center of gravity" approach, focusing on where the accused products were developed and where key business decisions were made—not where

24

they were sold. *See Ricoh*, 817 F. Supp. at 481 n.17. The analysis is similar for antitrust claims. *See Liggett*, 102 F. Supp. 2d at 536–37.

This case's center of gravity is the Northern District of California. Continuity Camera was researched, designed, developed, and tested primarily in and around Cupertino. Ex. 4 ¶¶ 8–13. Final Cut Camera and the Live Multicam functionality were researched, designed, developed, and tested primarily in the Central District of California—much closer to the Northern District of California than to New Jersey. Ex. 6 ¶ 8. Similarly, Apple primarily developed its mobile operating system—the control of which Reincubate claims is the source of Apple's anticompetitive conduct—in Cupertino. Ex. 4 ¶ 6. And the business decisions underlying Reincubate's antitrust claims were likewise overseen and directed by teams in the Northern District of California. Ex. 3 ¶¶ 12–15. None of the work or decision-making challenged in this case occurred in New Jersey. *Id.* ¶ 16.

Reincubate cannot manufacture a New Jersey nexus based on the nationwide availability of Apple's products and services. Indeed, courts in this District have consistently rejected such arguments, holding that "limited sales activity" or nationwide distribution does not establish where a claim arises. *Ricoh*, 817 F. Supp. at 482; *see also LG Elecs.*, 138 F. Supp. 2d at 589–90 (finding the center of gravity in California where "all information concerning development, testing, and research" and key decision-making occurred there and "[n]one of this activity has occurred in

New Jersey"). Because the operative facts underlying both the patent and antitrust claims arise in the Northern District of California, this factor strongly favors transfer.

**Party Convenience.** "The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 331 (D. Del. 2009). As explained above, Apple personnel, documents, and operations underlying Reincubate's claims are overwhelmingly located in the Northern District of California. *See supra* § II.B. The Northern District of California is therefore more convenient for Apple and its employee witnesses. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) (ordering transfer because of "the presence of possible party witnesses in Northern California"); *see supra* § II.B. And forcing employees to travel across the country for trial, away from their place of work, would create the "waste of time, energy and money" that Section 1404 is designed to avoid. *Liggett*, 102 F. Supp. 2d at 525–26; *see LG Elecs.*, 138 F. Supp. 2d at 590–91 (transferring case to the Northern District of California in part because many witnesses were located in or near California).

By contrast, transfer would impose no comparable burden on Reincubate. Reincubate is a British company with no meaningful connection to New Jersey. Compl. ¶ 9. Its key employees are based in London, which means that significant travel will be required by witnesses and counsel whether or not this case is litigated

26

in New Jersey or California. *See Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824, 2014 WL 4829027, at *4 (D. Del. Sept. 25, 2014) ("It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties."). Indeed, the Complaint admits that Reincubate's employees have traveled to Cupertino for ordinary business in the past, *see* Compl. ¶¶ 156, 172–74, and identifies no "reason for why [they] cannot travel" there again. *Papa v. IAT Ins. Grp., Inc.*, No. 25-04049, 2026 WL 592360, at *4 (D.N.J. 2026).

**Witness Convenience.** The convenience of the witnesses strongly favors transfer. As described above, Apple's principal operations are centered in Cupertino. Ex. 4 ¶¶ 8–13; Ex. 6 ¶¶ 8–10; *see also supra* § II.B. As a result, the engineers and other employees responsible for the relevant products (and related support and record-keeping) are based there or in other West Coast cities for whom travel to the Bay Area is more convenient than to the East Coast. *See* Ex. 2 ¶ 5; Ex. 4 ¶¶ 8–13; Ex. 5 ¶ 6; Ex. 6 ¶¶ 8–10; Ex. 7 ¶ 5. While there are also a few employees located in Cambridge, United Kingdom—for whom travel to New Jersey (8 hours) instead of California (11 hours) is slightly shorter—these few employees do not outweigh the great majority concentrated in or near the Northern District of California.

27

Potential third-party witnesses are also located in the Northern District of California. In addition to CORSAIR (*see supra* § II.B), a former software engineer who worked extensively on Continuity Camera resides in the Northern District of California. Ex. 4 ¶ 14. These witnesses are subject to compulsory process there but are beyond this Court's subpoena power. *See* Fed. R. Civ. P. 45; *see also Quintiles IMS Inc. v. Veeva Sys., Inc.*, No. 17–177, 2017 WL 2766166, at *5 (D.N.J. June 23, 2017) ("Compulsory process over non-party witnesses has been referred to as the single most important factor in a Section 1404 analysis."). This, too, strongly favors transfer. *See LG Elecs.*, 138 F. Supp. 2d at 590 (granting transfer where non-party witnesses "would not be subject to compulsory process in this district, but would be subject to compulsory process in the Northern District of California"); *Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (same).

**Location of Evidence.** As explained above, Apple's documentary and data records—including the core technical, source code, financial, licensing, and marketing evidence relevant to Reincubate's claims—are mostly stored on local computers in or near Cupertino or accessed by employees concentrated in the Northern District of California. Ex. 2 ¶ 6; Ex. 4 ¶ 16; Ex. 5 ¶ 5; Ex. 6 ¶¶ 11–14; Ex. 7 ¶ 6. That alone "weighs in favor of transfer" because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (internal quotation marks omitted). And courts are

28

particularly likely to transfer cases where, as here, no "likely source of proof" resides in the original forum: Reincubate alleges no evidence located in New Jersey, and Apple has identified no relevant documents for either the antitrust or patent claims that are located in New Jersey. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Thus, this factor supports transfer. *See Ricoh*, 817 F. Supp. at 483–84.

\* \* \*

In sum, the private and public interest factors strongly weigh in favor of transfer. This Court should transfer the case to the Northern District of California.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant Apple's motion and transfer this case to the Northern District of California.

Dated: May 4, 2026

Respectfully submitted,

*/s/Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100

*Of Counsel*:
Brian A. Rosenthal (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000

Cynthia Richman (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel: (202) 955-8500

Jaysen S. Chung (*pro hac vice forthcoming*)
Julian W. Kleinbrodt (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Tel: (415) 393-8200

Daniel G. Swanson (*pro hac vice forthcoming*)
Jason Lo (*pro hac vice forthcoming*)

30

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7000

31

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 4, 2026, I caused the preceding document

to be served on all counsel through the Court's ECF system.


<u>/s/ Liza M. Walsh</u>
Liza M. Walsh