# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| REINCUBATE, LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:26-cv-00828 (JXN) <br><br> **ORAL ARGUMENT REQUESTED** |

## DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

ARGUMENT......................................................................................................2

    I.   The DPLA's Forum-Selection Clause Requires Transfer.............................2

      A.  The Forum-Selection Clause Applies To This Case...................................2

      B.  No Exceptional Circumstances Override the Parties' Agreement...............6

    II.  The Interests Of Justice And Convenience Favor Transfer ..........................8

      A.  Public Interest Factors Support Transfer .......................................................8

      B.  Private Interest Factors Support Transfer ...................................................11

    III.  Severance Would Be Inefficient And Is Unwarranted .............................14

CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Inc.*,
2024 WL 1153977 (Fed. Cir. Mar. 18, 2024)...............................................13, 14

*In re Apple Inc.*,
2024 WL 3886316 (Fed. Cir. Aug. 21, 2024) .....................................................13

*In re Apple Inc.*,
650 F. App'x 771 (Fed. Cir. 2015) ...................................................................5, 6

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013)...............................................................................................6

*Bense v. Interstate Battery Sys. of Am., Inc.*,
683 F.2d 718 (2d Cir. 1982) ................................................................................8

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991).............................................................................................7

*Cont'l Grain Co. v. Barge*,
364 U.S. 19 (1960)...............................................................................................9

*Coronavirus Rep. v. Apple Inc.*,
560 F. Supp. 3d 632 (D.N.H. 2021).....................................................................7

*Coronavirus Rep. v. Apple Inc.*,
2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ...................................................13

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002).............................................................................................3

*Foster v. Chesapeake Ins. Co.*,
933 F.2d 1207 (3d Cir. 1991) ..............................................................................6

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
651 F.3d 1355 (Fed. Cir. 2011) ...........................................................................4

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .........................................................................14

ii

*Hoffer v. InfoSpace.com, Inc.*,
 102 F. Supp. 2d 556 (D.N.J. 2000)................................................................10

*In re Howmedica Osteonics Corp.*,
 867 F.3d 390 (3d Cir. 2017) .................................................................9, 15

*Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*,
 2018 WL 7108018 (D.N.J. Dec. 6, 2018).........................................................12

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
 119 F.3d 1070 (3d Cir. 1997) ...............................................................3

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) ................................................................15

*Kisano Trade & Inv. Ltd. v. Lemster*,
 737 F.3d 869 (3d Cir. 2013) ...............................................................11

*Lehman Bros. Holdings, Inc. v. Gateway Funding*,
 785 F.3d 96 (3d Cir. 2015) ................................................................9

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972)..........................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985).......................................................................7

*Phillips v. Audio Active Ltd.*,
 494 F.3d 378 (2d Cir. 2007) ...............................................................2

*Primoris v. FirstEnergy Corp.*,
 2026 WL 497045 (D.N.J. Feb. 23, 2026).....................................................3

*In re Remicade*,
 938 F.3d 515 (3d Cir. 2019) ...............................................................3

*Ricoh Co. v. Honeywell, Inc.*,
 817 F. Supp. 473 (D.N.J. 1993)..........................................................11, 13

*Rite Aid Hdqtrs Corp. v. Nest Int'l*,
 2019 WL 9100331 (E.D. Pa. Mar. 13, 2019) .................................................12

iii

*Sterling Heights Police & Fire v. Reckitt Benckiser*,
    2020 WL 7022654 (D.N.J. Nov. 30, 2020) ......................................................3, 4

*TradeComet.com LLC v. Google, Inc.*,
    435 F. App'x 31 (2d Cir. 2011) ........................................................................7

*Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*,
    2023 WL 4764813 (D.N.J. July 26, 2023) ...............................................3, 10, 11

*United States v. Apple Inc.*,
    No. 2:24-cv-04055, Dkt. No. 408 (D.N.J. Apr. 6, 2026).....................................9

*United States v. Browne*,
    834 F.3d 403 (3d Cir. 2016) ..........................................................................10

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
    515 U.S. 528 (1995)........................................................................................7

*Zero Techs., LLC v. Clorox Co.*,
    713 F. Supp. 3d 40 (E.D. Pa. 2024)................................................................12

## Statutes

28 U.S.C. §1404 ...................................................................................8, 11, 15

iv

**INTRODUCTION**

Reincubate cannot dispute that it is a British plaintiff suing a California corporation over alleged conduct directed from California.  Neither its untenable reading of the forum-selection clause nor its anemic objections to litigating in California is a reason to keep this case in the District of New Jersey.

*First*, Reincubate tries to evade its agreement to litigate in California by insisting this case targets "consumer-market and platform-level conduct" that is outside of the DPLA's reach.  Opp. 16.  Such semantics cannot obscure substance: Reincubate concedes this case arises out of "Apple's relationship with Reincubate" (*id.* at 17) and that it challenges not only the DPLA's termination clause but also Apple's alleged conduct under the DPLA directed specifically at the Camo app (*id.* at 5, 19–20).  It never addresses what it means for a claim to "arise out of or relate to" the parties' contract or relationship, but any reasonable reading embraces this dispute.

*Second*, Reincubate identifies no legitimate interest in keeping this case here. Reincubate points to other antitrust cases before this Court, but it never sought to relate this case to those—in which different kinds of plaintiffs allege monopolization of different markets through different conduct with no patent claims.  Its remaining counterpoints do not displace the core reality that all roads in this case lead to Northern California.

The right resolution is not, as Reincubate suggests, to send one claim west while the rest remain here.  The transfer statute exists to economize court and party resources even where venue may be proper in the original district.  The Court should transfer the entire case in the interests of efficiency and convenience.

ARGUMENT

## I.    The DPLA's Forum-Selection Clause Requires Transfer

The parties agreed to litigate in the Northern District of California any dispute "arising out of or relating to" their "Agreement," "Apple Software," or Reincubate's "relationship with Apple."  Mot., Ex. 3, Ex. A § 14.10; *see* Mot. 2–4; Opp. 4–5.  As Apple explained, this is a mandatory clause that requires transfer.  Mot. 10–14.  Reincubate's two responses both fail.

### A. The Forum-Selection Clause Applies To This Case

To argue the forum-selection clause is inapplicable, Reincubate devises legal standards that do not exist, tries to reinvent the claims it alleged, and evades the plain reading of the parties' agreement.

**1.** Reincubate first suggests a forum-selection clause is applicable to a dispute only if claims "arise out of" the agreement.  Opp. 10.  The out-of-circuit case it cites for that proposition states no such legal rule for clauses (like Apple's) that apply to a broader set of disputes "arising out of or relating to" the parties' agreement and relationship (Mot., Ex. 3, Ex. A § 14.10).  *See Phillips v. Audio Active Ltd.*, 494 F.3d

2

378, 388–90 (2d Cir. 2007) (determining whether claims "arose out" of the relevant contract because the forum-selection clause at issue used that language). As a contract, the DPLA must be interpreted according to its terms. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074–75 (3d Cir. 1997).

**2.** Reincubate next seeks to evade the Third Circuit's conclusion that claims arise out of or relate to an agreement where they are "connected in any way" to it. *In re Remicade*, 938 F.3d 515, 523 (3d Cir. 2019); *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (arbitration clauses are interpreted by "the plain text of the contract"). Reincubate tries to cabin that construction as somehow limited to cases under the Federal Arbitration Act, Opp. 17–18, but that is no reason to give the same language a different meaning here. *See, e.g.*, *Unbeatablesale.com v. Meta Platforms, Inc.*, 2023 WL 4764813, at *2–4 (D.N.J. July 26, 2023) (concluding "Plaintiff's use of Facebook" fell within a similar forum-selection clause); *Primoris v. FirstEnergy Corp.*, 2026 WL 497045, at *1, *5–7 (D.N.J. Feb. 23, 2026) (similar).

**3.** Under any reasonable construction, Reincubate's claims arise out of and relate to the DPLA, Apple Software, or its relationship with Apple. Start with Count II: Reincubate all but admits that its cause of action challenging "Section 11.2(d) of the DPLA [as] unenforceable and unlawful," Compl. ¶¶ 206–08, arises out of or relates to the DPLA. *See* Opp. 5–6, 19, 33–34 (asking to sever and transfer this claim). This alone means the forum-selection clause applies. *See Sterling Heights*

3

*Police & Fire v. Reckitt Benckiser*, 2020 WL 7022654, at \*6 (D.N.J. Nov. 30, 2020) (transferring case even though only some claims fell within forum-selection clause).

Nor can Reincubate escape the forum-selection clause's reach by arguing its antitrust claim challenges "consumer-market and platform-level conduct" outside of the DPLA rather than covered "developer-specific" conduct. Opp. 16–17. The complaint challenges developer-specific conduct. By Reincubate's own lights, Apple's alleged "anticompetitive acts include . . . contractual restrictions against app distribution and access to low-latency Wi-Fi that have impeded Camo from competing." Compl. ¶ 182; *see also id.* ¶¶ 8, 67, 116–118, 123. Apple's alleged developer-specific conduct, such as refusing to give Reincubate certain APIs, peer-to-peer WiFi, or "an App Preview for Camo," Compl. ¶ 122, are plainly related to the platform-developer relationship created by the DPLA. *See* Mot., Ex. 3, Ex. A § 14.10. This alone means Count I arises out of the DPLA no less than Count II.

Reincubate's patent claims are no different. The general rule is that "patent infringement disputes do arise from license agreements." *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) (quotation omitted). That holds here. Reincubate's assertion that "[t]he conduct underlying [its] claims would have occurred whether or not Reincubate [signed] the DPLA," Opp. 16, cannot be reconciled with its allegation that Apple induced Reincubate "to share technical details, beta builds, and market data," Compl. ¶ 126, as part of the "relationship

4

wherein Reincubate gets access to Apple-created software to develop apps like Camo," Opp. 1; *see* Mot., Ex. 3, Ex. A at 1 (DPLA enables Reincubate to "develop and test" apps for the App Store). In any event, "but for" causation is "not the standard," Opp. 16, and Reincubate offers no argument that the alleged conduct did not at least relate to its relationship with Apple. *See* Mot. 12–13.

For good measure, Reincubate's claims also implicate Apple Software. As Apple's opening brief made clear, *see* Mot. 3 n.1, "Apple Software" includes more than software Apple provides to developers, *contra* Opp. 11–12. The DPLA expressly defines Apple Software to include various operating systems, including iOS—the very product through which Apple allegedly "preserve[s] its monopoly power" and into which Apple allegedly "embedded" the allegedly infringing technologies. Compl. ¶¶ 8, 55. As a result, this case "relate[s] to" Apple Software as well. *See* Mot. Ex. 3, Ex. A at 3.

**4.** Reincubate struggles in vain for supportive authority. Reincubate's chief case is an opinion from the Federal Circuit on a mandamus petition: *In re Apple Inc.*, 650 F. App'x 771 (Fed. Cir. 2015). But that case did not and could not resolve the proper interpretation of the DPLA. *See id.* at 774 (reviewing only for "clear and indisputable" legal error). It is also inapposite: It involved no antitrust claims, and the alleged infringement was not tied to the developer's relationship with Apple as a platform operator. *See id.* at 772, 774. By contrast, Reincubate alleges Apple

5

"induced" it to share information that was used to "shape [Apple's] own [infringing] feature," Compl. ¶ 8—the kind of accusation about Apple's role in "the marketing and delivery of the application" to which *In re Apple* said the forum-selection clause applies. 650 F. App'x at 773.

Reincubate's attempts to distinguish *Coronavirus Reporter* and *APT Systems* only highlight their applicability. It suggests those cases are different because they "involved a developer challenging Apple's exercise of App Store powers to adversely act on the developer's own application." Opp. 16. But so does this case. According to Reincubate, Apple's "contractual restrictions against app distribution . . . impeded Camo" and Camo "faced several issues on the Apple-run App Store" because Apple allegedly "enforce[ed] contractual terms and rules that restrict the behavior of non-Apple apps." Compl. ¶¶ 118, 182. The forum-selection clause applies just as much here as in those cases.

### B. No Exceptional Circumstances Override the Parties' Agreement

Reincubate cannot show this is an "exceptional" case in which a valid forum-selection clause should not be enforced. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013). That requires proving litigation in the Northern District of California is "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court or that the clause was procured through fraud or overreaching." *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1219 (3d Cir.

1991).  Reincubate cannot (and does not attempt to) make that showing.  Even if the DPLA is a "mass-adhesion agreement," Opp. 4—a characterization Reincubate makes without authority—it is enforceable and not fraudulent.  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991).

Ignoring the applicable standard, Reincubate claims that its challenge to the DPLA's separate termination provision renders the forum-selection clause unenforceable.  *See* Opp. 19–20.  But the Supreme Court has rejected this theory. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632 (1985) ("an antitrust dispute does not alone warrant invalidation of the selected forum").  Other courts have "squarely rejected" similar assaults on the DPLA, *Coronavirus Rep. v. Apple Inc.*, 560 F. Supp. 3d 632, 639 (D.N.H. 2021), and often transfer antitrust cases when a challenged contract picks a different forum.  *See, e.g., TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 37 (2d Cir. 2011); Mot. 10.

Reincubate also suggests transfer would run afoul of the "'prospective waiver' doctrine." Opp. 20.  But that rule applies only where "choice-of-forum and choice-of-law clauses operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations." *Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19.  Each of Reincubate's claims can proceed in the Northern District of California.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995).

## II.    The Interests Of Justice And Convenience Favor Transfer

Reincubate repeatedly argues that efficiency and convenience should not override the patent and antitrust venue statutes.  *See* Opp. 20–31.  But that is why Congress enacted Section 1404(a): It facilitates transfer to a more convenient forum even where the original venue is permissible.  28 U.S.C. § 1404(a); *see also Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (rejecting argument that the antitrust venue statute "would be subverted by enforcement of forum-selection clauses").  In every sense, the Northern District of California is that forum—where most witnesses sit, where most alleged conduct took place, and where judges have less burdened dockets.  *See* Mot. 4–8, 17–29.  The marginalia with which Reincubate responds does not show otherwise.

### A. Public Interest Factors Support Transfer

Reincubate contends that just two of six public interest factors support New Jersey.  *See* Mot. 16–22; Opp. 20–24.  Even those limited arguments are misplaced.

***Practical Considerations and Judicial Economy.***    Reincubate does not dispute that Apple is headquartered in the Northern District of California or that the vast majority of relevant employees and records are accessible there.  *See* Mot. 4–8; *see* Opp. 20–23, 26–31.  Reincubate instead points to the United States and several States' (and putative follow-on class actions) proceedings before this Court.  *See* Opp. 20–21.  Those cases are different: They allege monopolization of different

markets—smartphones and smartwatches, not mobile operating systems (*compare* First Am. DOJ Complaint, No. 2:24-cv-04055, Dkt. No. 51 (D.N.J. June 11, 2024), ¶¶ 164–75 *with* Compl. ¶¶ 42–55); focus on distinct conduct with respect to different apps—such as alleged restrictions on super apps and third-party watches, not webcam apps (*compare* DOJ Compl. ¶¶ 10, 60–118 *with* Compl. ¶¶ 1–5, 177–202); and involve no allegations of patent infringement (*compare* DOJ Compl. ¶¶ 199–235 *with* Compl. ¶¶ 210–96).  Indeed, Reincubate did not mark this case as related, nor has it sought to consolidate these cases since.

The efficiencies at which Reincubate gestures are thus illusory.  The MDL is already well into discovery.  *See* Am. Scheduling Order, *United States v. Apple Inc.*, No. 2:24-cv-04055, Dkt. No. 408 (D.N.J. Apr. 6, 2026).  It would make little sense—and would slow that litigation—to add Reincubate into the mix.  *See Lehman Bros. Holdings, Inc. v. Gateway Funding*, 785 F.3d 96, 102 (3d Cir. 2015) (affirming refusal to consolidate cases "in light of the vastly different stages of" litigation).  All of Reincubate's efficiency arguments apply at least as much to the Northern District of California.  *See* Mot. 4–8, 17–19.[1]

***Local Interests.***    Reincubate's attempts to diminish the local interest in

---

[1] The cases on which Reincubate relies concern consolidation into a single case—relief Reincubate has not sought and would be inappropriate.  *See* Opp. 21 (citing *Cont'l Grain Co. v. Barge*, 364 U.S. 19 (1960), and *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403–05 (3d Cir. 2017)).

9

litigating in Northern California reduce to an observation that *some* conduct occurred in the Central District of California. Opp. 22. But transfer is appropriate when "a substantial amount" of the alleged conduct occurred in the transferee district. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 576 (D.N.J. 2000). Reincubate cannot ignore the declarations and allegations that make clear the relevant conduct occurred in the Northern District of California. *See* Mot. 6–8 (citing Ex. 3, 4, 5, 6, 7).

What remains missing is any meaningful interest in this jurisdiction. Reincubate's smattering of LinkedIn profiles claim to capture employees in New Jersey, Pennsylvania, and New York. *See* Opp. 22–23, 30. That unauthenticated proffer has no evidentiary value. *See United States v. Browne*, 834 F.3d 403, 432–34 (3d Cir. 2016). But even if credited, many of those individuals work on things like Apple Music, Apple Pay, and iTunes Forecasting—not Continuity Camera, Final Cut Camera, App Review, or Apple's Developer Relations. *See* Hecht Decl. ¶¶ 4–7 & Ex. B. The speculative presence of a handful of irrelevant employees bespeaks no local interest for a New Jersey court to resolve.

***Court Congestion.*** Conceding the Northern District of California is less congested, Reincubate suggests these statistics "do not control." Opp. 23. But the language it purports to quote from *Unbeatablesale.com*, 2023 WL 4764813, at *3 n.2, does not appear in the opinion. Judge Shipp in fact cited the same set of statistics in support of transfer. *Id.* Nor does Reincubate's argument that "aggregate statistics

10

about D.N.J. civil docket are distorted by mass-tort multidistrict cases" stand.  Opp. 23.  Keeping this case in New Jersey so that it can proceed alongside an MDL all but guarantees it will "skew" toward a slower "trial-pace time."  *Id.*

### B. Private Interest Factors Support Transfer

Reincubate does not dispute that this case "might have been brought" in the Northern District of California, 28 U.S.C. § 1404(a), where Apple is headquartered, where the bulk of employees relevant to this case work, and where the alleged events central to Reincubate's claims transpired.  Mot. 2–8.  Against Apple's substantial proffer, Reincubate provides no material evidence favoring New Jersey.

***Plaintiff's Choice of Forum.***  To obtain any deference for its choice of forum, Reincubate must "mak[e] a *strong* showing of convenience."  *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 875 (3d Cir. 2013) (citation modified).  The only concrete fact Reincubate cites is Apple's operation of nine retail stores in New Jersey.  *See* Opp. 4, 25, 27.  Because the alleged design, strategy, development, and sales decisions are not made at Apple Stores, these sites of "limited sales activity," *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993), are not a "bona fide forum-related justification[]," Opp. 26.

The rest of its purported justifications fare no better.  Reincubate again points to *United States v. Apple*.  Opp. 25.  But as explained above, that litigation does little to explain why a British developer would find New Jersey more convenient.  *See*

11

*supra* Section II.A.  Reincubate also argues that Apple did not enforce its forum-selection clause there, but none of those cases were brought by developers who signed the DPLA.  In any event, declining to enforce a clause in a different case involving different parties and different claims is irrelevant.  *See Rite Aid Hdqtrs Corp. v. Nest Int'l*, 2019 WL 9100331, at *2 (E.D. Pa. Mar. 13, 2019).

**Center of Gravity.**  Reincubate also fails to show this case's center of gravity lies outside the Northern District of California.  That *some* work relevant to its patent claims occurred in Southern California, Opp. 26, does not mean *most* of the relevant decisions did.  *See* Mot. 25 (Northern District of California is most relevant).  Reincubate has even less to say about its antitrust claims: unable to contest that the gravamen of those claims lie in Northern California, it claims that standard does not apply—without identifying an alternative test or addressing the cases that have applied the analysis to antitrust actions.  *See Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 76 (E.D. Pa. 2024) (considering "where the anticompetitive conduct occurred as where the claim arises"); *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 2018 WL 7108018, at *6 (D.N.J. Dec. 6, 2018) (similar).

**Witness Convenience.**  Reincubate's convenience arguments miss the forest for the trees.  To start, Reincubate has not identified a single material potential witness in New Jersey.  *See supra* Section II.A at 10.  It instead focuses on a handful of Apple partnership managers in London.  *See* Opp. 28–29.  That is inconsistent

12

with its position that its claims are focused on Apple's development of allegedly infringing products and platform-level conduct—the vast majority of which took place in the Northern District of California. *See* Mot. 4–8, 26 (collecting evidence).[2]

Reincubate tries to dismiss Apple's uncontroverted evidence as "threadbare." Opp. 30. But Apple's declarations identify "individuals tied to identified issues." *Id.* For example, Mr. Ford is "directly responsible . . . for Continuity Camera." Mot. Ex. 4, ¶ 6. Where Apple identifies "groups," Opp. 30, it is because Reincubate implicated unnamed "members of Apple's App Review and Design teams." Compl. ¶¶ 1, 66, 121–23. It is undisputed that the leaders of those teams, who Apple named specifically because of their unique and material knowledge, reside in the Northern District of California as do the vast majority of their teams. *See* Mot. Ex. 2 ¶ 5; Ex. 3 ¶¶ 5, 12–15; Ex. 4 ¶¶ 8–10, 12; Ex. 5 ¶¶ 5–6; Ex. 6 ¶¶ 8, 10, 12–13; Ex. 7 ¶ 5.

None of this is like the inapposite mandamus decisions Reincubate cites. *See In re Apple Inc.*, 2024 WL 1153977, at \*2 (Fed. Cir. Mar. 18, 2024); *In re Apple Inc.*, 2024 WL 3886316, at \*2 (Fed. Cir. Aug. 21, 2024). Those cases turned in large part on key Apple witnesses working in the original forum—unlike this case, where

---

[2] Reincubate's complaints about the time it takes to travel to the Northern District of California "barely deserves a response." *Ricoh*, 817 F. Supp. at 484 n.24. Reincubate is wrong to assume this case would be transferred to San Jose. *E.g., Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) (San Francisco). And while Reincubate tries to dismiss its visits to Cupertino as "orchestrated . . . by Apple," Opp. 27, its prior travel shows such trips are feasible. *See* Mot. 27. Reincubate points to no comparable business travel to New Jersey.

13

there are no similar witnesses in New Jersey. *See In re Apple Inc.*, 2024 WL 1153977, at \*1. Nor did those cases include multiple declarations from high-level finance, intellectual property, marketing, and App Review employees with personal knowledge about the location of their teams.

***Compulsory Process.*** Reincubate similarly fails to show the Northern District of California is inconvenient for third-party witnesses. It quibbles over whether EpocCam is relevant prior art. *See* Opp. 32. But EpocCam developed a similar product to Reincubate's that predates the Asserted Patents by several years. *See* Mot. 8, 28. That EpocCam is now owned by a Munich-based entity is irrelevant because its parent CORSAIR likely has control over relevant documents. *See id.* The importance of this evidence far outweighs the fact that a "peripheral" former employee attends (but may not at the time of trial) Columbia University. Opp. 32.

***Location of Records.*** Reincubate dismisses without authority the location of Apple's records because they are "cloud-accessible." Opp. 33. That argument has been rejected. *In re Genentech, Inc.*, 566 F.3d 1338, 1345–46 (Fed. Cir. 2009). Physical-access controls, source-code repository restrictions, and on-site review requirements mean documents likely will need to be reviewed on site. *See id.*

## III.  Severance Would Be Inefficient And Is Unwarranted

As a last resort, Reincubate invites the Court to sever and transfer Count II. *See* Opp. 33. There is no basis to do so because the forum-selection clause applies

14

to all claims.  *See supra* Section I.A.  Severance would be inefficient in any event.

Reincubate does not dispute that the first three steps of the Third Circuit's four-step inquiry favor transfer in its entirety.  *See Howmedica*, 867 F.3d at 403–05. Nor does it carry its remaining burden: proof that "the strong public interest in upholding the contracting parties' settled expectations [to transfer the case] is 'overwhelmingly' outweighed by the countervailing interests."  *Id.*  It cannot do so because the parties to each claim are identical, and Count II is inextricably linked to the others.  *See id.* at 409–11; *see also, e.g.*, Compl. ¶¶ 189–193 (claiming Count II's challenge to the termination provision supports Count I).

Reincubate argues the patent and antitrust venue statutes provide "countervailing interests" against transfer.  Opp. 34.  But neither the statute nor any case says as much.  As explained above, Section 1404 contemplates transfer where both the original and transfer district are permissible venues.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).  Reincubate's argument would lead to severance in every case.  The Court should reject this invitation to inefficiency.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court transfer this action to the United States District Court for the Northern District of California.

Dated:  June 5, 2026                                Respectfully submitted,

                                                        */s/ Liza M. Walsh*

15

Liza M. Walsh
Douglas E. Arpert
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100

*Of Counsel*:
Brian A. Rosenthal (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000

Cynthia Richman (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:  (202) 955-8500

Jaysen S. Chung (*pro hac vice forthcoming*)
Julian W. Kleinbrodt (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Tel:  (415) 393-8200

Daniel G. Swanson (*pro hac vice forthcoming*)
Jason Lo (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

16

Tel: (213) 229-7000

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 5, 2026, I caused the preceding document

to be served on all counsel through the Court's ECF system.

<u>*/s/ Liza M. Walsh*</u>